UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

RICHARD A. PITINO,

PLAINTIFF,

v.

ADIDAS AMERICA, INC.

DEFENDANT.

NO. 3:17-CV-639-DJH

**ADIDAS'S MOTION TO DISMISS OR, ALTERNATIVELY,
TO TRANSFER VENUE**

Clark C. Johnson
Michael T. Leigh
Jeffrey S. Moad
STITES & HARBISON PLLC
400 West Market Street, Suite 1800
Louisville, Kentucky 40202
Tel: (502) 587-3400
cjohnson@stites.com
mleigh@stites.com
jmoad@stites.com

William H. Taft V
Miheer Mhatre
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6877
whtaft@debevoise.com
mmhatre@debevoise.com

*Counsel to Defendant adidas America, Inc.*

Dated: November 24, 2017

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

THE ALLEGATIONS OF THE COMPLAINT ................................................................. 4

ARGUMENT ...................................................................................................................... 6

    I.   The Court Should Dismiss or Stay this Action in Favor of Mandatory
       Arbitration. ............................................................................................................. 6

    II.  The Court Should Dismiss this Action, or Transfer It to the Proper Venue,
       Pursuant to the Parties' Contractual Forum Selection Clause. .................................. 8

    III. The Court Should Dismiss Pitino's Complaint for Failure to State a Claim. ............. 11

        A.  As a Third Party to the Alleged Conduct, Pitino Cannot Recover for
           Emotional Distress. ........................................................................................ 11

        B.  The Conduct Alleged Does Not Meet the High Threshold for Outrage
           Claims under Kentucky Law. ......................................................................... 13

CONCLUSION ................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Clemons*,
　920 S.W.2d 884 (Ky. App. 1996) ........................................................................ 8, 11, 12

*Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. District of Texas*,
　134 S.Ct. 568 (2013) ................................................................................................ 9, 11

*Banks v. Fritsch*,
　39 S.W.3d 474 (Ky. App. 2001) ..................................................................................... 13

*Branch v. Mays*,
　2017 WL 3048659 (E.D. Tenn. May 25, 2017) ............................................................ 10

*Cooper v. Bd. of Educ.*,
　2009 WL 2581239 (Del. Super. Aug. 20, 2009) ........................................................... 12

*Craft v. Rice*,
　671 S.W.2d 247 (Ky. 1984) ........................................................................................... 15

*Effinger v. Philip Morris, Inc.*,
　984 F. Supp. 1043 (W.D. Ky. 1997) .............................................................................. 14

*Falbe v. Dell, Inc.*,
　2004 WL 1588243 (N.D. Ill. July 14, 2004) ................................................................... 6

*Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*,
　350 F.3d 568 (6th Cir. 2003) .......................................................................................... 7

*Humana of Kentucky, Inc. v. Seitz*,
　796 S.W.2d 1 (Ky. 1990) ..................................................................................... 3, 13, 15

*Jackson v. City of Columbus*,
　194 F.3d 737 (6th Cir. 1999) .......................................................................................... 4

*Ky. Ins. Guar. v. S&A Constructors, LLC*,
　2017 WL 3090304 (W.D. Ky. 2017) ............................................................................... 9

*Lee v. Hefner*,
　136 Fed. App'x 807 (6th Cir. 2005) ........................................................................ 11, 12

*Mineer v. Williams*,
　82 F. Supp. 2d 702 (E.D. Ky. 2000) ............................................................................. 11

*Morgantown Machine & Hydraulics of Ohio, Inc. v. Am. Piping Prods., Inc.*,
   2016 WL 705261, at *2 (N.D. Ohio Feb. 23, 2016) ...................................................... 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ............................................................................................................ 8

*NCR Corp. v. Korala Assocs., Ltd.*,
   512 F.3d 807 (6th Cir. 2008) ......................................................................................... 8

*Osborne v. Payne*,
   31 S.W.3d 911 (Ky. 2000) ............................................................................................ 16

*Personal Sec. & Safety Sys., Inc. v. Motorola, Inc.*,
   297 F.3d 388 (5th Cir. 2002) ........................................................................................ 10

*Puri v. Baugh*,
   2015 WL 3796346 (W.D. Ky. June 18, 2015) ............................................................. 14

*Smith v. Aegon Cos. Pension Plan*,
   769 F.3d 922 (6th Cir. 2014) ......................................................................................... 9

*Stringer v. Wal-Mart Stores*, Inc.,
   151 S.W.3d 781, 791 (Ky. 2004) .................................................................................. 13

*Telecom Decision Makers, Inc. v. Birch Comm's, Inc.*,
   2015 WL 5722817 (W.D. Ky. Sept. 29, 2015) .............................................................. 6

*Travelers Prop. Cas. Co. of Am. v. Centimark, Corp.*,
   2005 WL 1038842 (S.D. Ohio May 3, 2005) ................................................................ 9

*Western Land Co., LLC v. Francis*,
   2013 WL 3992499 (W.D. Ky. Aug. 5, 2013) ................................................................. 7

*Whittington v. Whittington*,
   66 S.W.2d 73 (Ky. App. 1989) ..................................................................................... 14

*Wilson v. Lowe's Home Ctr.*,
   75 S.W.3d 229, (Ky. App. 2001) .................................................................................. 15

*Wireless Props., LLC v. Crown Castle Int'l Corp.*,
   2011 WL 3420734 (E.D. Tenn. Aug. 4, 2011) ............................................................... 9

*Youngblood v. City of Paducah*,
   2016 WL 2643030 (W.D. Ky. May 6, 2016) ................................................................ 13

**Statutes**

28 U.S.C § 1404(a) ............................................................................................... 9

**Other Authorities**

American Arbitration Association Commercial Arbitration Rule 1(a) ............................... 7

American Arbtiration Association Commercial Arbitration Rule 7(a) ............................... 6

Restatement (Second) of Torts § 46 .................................................................3, 12, 13, 15

adidas America, Inc. ("adidas") moves to dismiss Richard A. Pitino's sole cause of action alleging the tort of outrage, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3–4 and Federal Rule of Civil Procedure 12(b)(6). In the alternative, adidas moves to transfer this action to the U.S. District Court for the District of Oregon in Multnomah County pursuant to 28 U.S.C. § 1404(a).

## PRELIMINARY STATEMENT

The single count in the Complaint seeks compensation for emotional distress allegedly suffered by Pitino as a result of his being implicated in a recruiting scandal involving payments directed to the family of a high school basketball player. The scandal, as described in a criminal complaint unsealed by the U.S. District Court for the Southern District of New York on September 26, 2017 (the "Criminal Complaint"), alleges that James Gatto, an adidas employee, conspired with University of Louisville ("UofL") coaches, individuals associated with amateur athletics teams, a sports agent, and a financial planner to funnel cash to the high school basketball player in exchange for that player's commitment to attend UofL. Although Pitino claims he had no involvement with any conspiracy to direct payments to the basketball player's family, the Criminal Complaint includes allegations suggesting that he was both aware of and supported the scheme.

The Criminal Complaint precipitated a chain of events leading to Pitino's suspension and firing by UofL. Immediately following his termination as head coach of UofL's men's basketball team, adidas terminated its endorsement agreement with Pitino (the "Endorsement Agreement"). Pitino promptly triggered a contractual dispute resolution process under the Endorsement Agreement, asserting that adidas breached its duty of good faith and fair dealing by conspiring with others to bribe the family of a UofL basketball

recruit as alleged in the Criminal Complaint. He relies on precisely the same allegations—asserting adidas's responsibility for a scheme to direct payments to a basketball recruit while maintaining his own innocence—to bring this action seeking damages for emotional distress he says he suffered as a result of the publicity surrounding the Criminal Complaint.

The Court need not reach the merits of Pitino's Complaint because he filed this action in the improper forum. Although the Complaint avoids mentioning the Endorsement Agreement, presumably to avoid its binding arbitration clause and forum selection provision, the questions presented by Pitino's tort claim are the same questions presented by his contract claim, namely: the nature of Gatto's involvement with the alleged conspiracy, whether adidas directed any conduct at Pitino, and whether Pitino was a wholly innocent bystander or a participant in the alleged scheme. Pitino already has invoked the Endorsement Agreement's dispute resolution process with respect to his contract claim. The Court should dismiss the intertwined tort claim, or stay this action, so the claims can be resolved together through the contractual mediation and arbitration process, avoiding the risk of conflicting rulings and preventing Pitino from seeking relief against adidas for the same conduct in two different actions. Alternatively, to the extent the Court declines to dismiss or stay this action in favor of the contractual dispute resolution process Pitino already has begun, the Court should enforce the parties' contractual forum selection clause and dismiss or transfer the case as filed in the improper venue.

Should the Court consider the merits of Pitino's outrage claim, the Court should dismiss the Complaint as a matter of law because Pitino fails to allege that adidas directed any conduct at Pitino. The Criminal Complaint on which Pitino relies alleges that payments to a recruit's family violated National Collegiate Athletic Association ("NCAA") rules and

defrauded UofL, but neither the Criminal Complaint nor Pitino's Complaint alleges that adidas or any of its employees engaged in any conduct directed at Pitino. To the contrary, Pitino specifically asserts that UofL was the intended victim of the allegedly outrageous conduct. As an alleged bystander to the events described in the Criminal Complaint, Pitino has no claim for outrage because Kentucky law does not permit plaintiffs to recover for emotional distress caused by actions directed at others.

Even if Kentucky law allowed bystanders like Pitino to recover for emotional distress caused by outrageous conduct directed at third parties, which it does not, the Court should dismiss the Complaint because it fails to allege that adidas engaged in conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990) (quoting Restat. (Second) of Torts § 46 cmt. d). To be clear, adidas takes the allegations in the Criminal Complaint extremely seriously. But it does not minimize the gravity of the recruiting violations and conspiracy alleged by Pitino to conclude that directing payments to the family of a basketball recruit in violation of NCAA rules falls short of the atrocious and utterly intolerable conduct needed to support a claim of outrage under Kentucky law.

The Court should reject Pitino's effort to use this action against adidas as a platform for airing grievances and rehabilitating his reputation. Because Pitino contractually committed to resolve disputes with adidas in a different forum, and because the Complaint fails to state a claim for relief on its face, this case should either be dismissed as improperly filed, transferred to Oregon, or dismissed outright as failing to state a claim.

## THE ALLEGATIONS OF THE COMPLAINT

Pitino alleges that he has been harmed by the publicity surrounding a scandal involving payments allegedly made to a UofL basketball recruit, or his family, in exchange for that player's commitment to attend UofL. (Compl. ¶ 37.) The sole basis for his allegations against adidas is the Criminal Complaint, filed by the United States Attorney's Office for the Southern District of New York, charging James Gatto, an adidas employee; Merl Code, an amateur athletics figure affiliated with adidas; and several others with crimes arising out of these alleged payments. (*Id.* at ¶ 16; *United States v. James Gatto, et al.*, No. 17-MJ-7120 (S.D.N.Y. filed Sept. 25, 2017) ("Crim. Compl."), attached as Ex. A to the Decl. of Michael T. Leigh.)[1] The Criminal Complaint alleges, and Pitino restates here, that the criminal defendants conspired to make payments to the family of a recruit in order to secure his agreement to attend UofL with the understanding that, upon becoming a professional athlete, the recruit would sign an endorsement agreement with adidas and engage the other criminal defendants as agents and advisors. Although the Criminal Complaint does not name any UofL coaches as defendants, it does allege that at least one UofL coach (identified as "Coach-1") was aware of and supported the scheme to direct payments to the families of basketball recruits. (Crim. Compl. ¶¶ 36(a)–(c).) The Criminal Complaint further alleges that one of the defendants "said that he had spoken with Coach-2," which is a reference to Pitino, (Compl. ¶ 16), "about getting additional money for [a recruit's] family," and requested that Pitino call Gatto at adidas and exert his influence to support the scheme.

---

[1] The Court may take judicial notice of the Criminal Complaint, which is both a public record and incorporated by reference in Pitino's Complaint. *See Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir. 1999).

(*Id.* ¶¶ 36(d)–(e).) In the days leading up to the recruit announcing his commitment to UofL, Pitino made three calls to Gatto. (*Id.* ¶ 37; *see* Compl. ¶ 28.)

Pitino disclaims any personal knowledge of Gatto's allegedly tortious conduct, asserting that he played no part—"active, passive, or through willful ignorance"—in the alleged scheme. (Compl. ¶¶ 2, 26–28.) Consistent with the description of Pitino as a bystander to the alleged scheme, and not its target, the Complaint concedes that adidas (*i*) "had no desire to adversely affect Pitino's contracts with his employer or others"; (*ii*) directed its conduct at UofL, not at Pitino; and (*iii*) sought enrichment, but not at Pitino's expense. (*Id.* ¶ 38.)

The Complaint asserts that the backdrop of this alleged scheme was adidas's longstanding commercial relationship with UofL. (*Id.* ¶¶ 13, 28.) This commercial relationship is founded in the endorsement agreement between UofL and adidas, (*id.* ¶ 12), and the now-terminated Endorsement Agreement between Pitino and adidas. (Leigh Decl. Ex. B (the "Endorsement Agreement").) The Complaint describes adidas's efforts to "compete more aggressively to outfit college and university teams," the extension of adidas's endorsement agreement with UofL, the relationship between the success of outfitted teams and the value of the sponsorship to adidas, and communications between Pitino and Gatto, adidas's employee, pertaining to the adidas sponsorship. (Compl. ¶ 12, 13, 21 & 28.)

Shortly after the unsealing of the Criminal Complaint, UofL suspended and then terminated Pitino from his position as head coach of the UofL men's basketball team. (*Id.* ¶ 4.) That termination led adidas to terminate the Endorsement Agreement. (Leigh Decl. ¶ 5.) Two days later, Pitino initiated the dispute resolution process under the Endorsement

Agreement, claiming that adidas "breached its duties of good faith and fair dealing by conspiring with others to bribe the family of a University of Louisville basketball recruit, all as revealed by the criminal complaint in *United States v. Gatto, et al.*" (*See id.* Ex. C.) The explicit basis for his contractual claim is that adidas is responsible for the conduct described in the Criminal Complaint and that Pitino is innocent.

## ARGUMENT

### I.   The Court Should Dismiss or Stay this Action in Favor of Mandatory Arbitration.

Pitino's relationship with adidas is grounded in the Endorsement Agreement, which though not attached to the Complaint can be considered in connection with a motion to compel arbitration. *See, e.g.*, *Falbe v. Dell, Inc.*, 2004 WL 1588243, at *1 n.1 (N.D. Ill. July 14, 2004). The Endorsement Agreement contains the following dispute resolution clause:

> The parties agree that any dispute concerning the interpretation, construction, or breach of this Agreement shall be submitted to a mediator agreed upon by the parties for nonbinding confidential mediation . . . . If the parties fail to resolve their dispute through mediation, then the parties agree that the dispute shall be submitted to final and binding confidential arbitration before the American Arbitration Association in Portland, Oregon.

(Endorsement Agreement § 19 (the "Arbitration Clause").)

"The Sixth Circuit has determined that 'contract-related tort claims involving the same operative facts as parallel claim[s] for breach of contract should be heard in the forum selected by the contracting parties." *Telecom Decision Makers, Inc. v. Birch Comm's, Inc.*, 2015 WL 5722817, at *3 (W.D. Ky. Sept. 29, 2015), *aff'd* 654 F. App'x 218 (6th Cir. 2016). To the extent there is any dispute regarding the scope of the Arbitration Clause, that dispute must be resolved by the arbitrator.[2] *Western Land Co., LLC v. Francis*, 2013 WL 3992499, at

---

[2]   The Arbitration Clause provides for arbitration under the American Arbitration Association Commercial Arbitration Rules (the "AAA Rules"), *see* AAA Rule 1(a), which in turn provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any

*2 (W.D. Ky. Aug. 5, 2013) (holding that parties' selection of the AAA Rules "provide[s] a clear and unmistakable delegation of authority to the arbitrator to decide objections related to the scope or validity of the arbitration provision"). If, however, the Court were to make the threshold determination of arbitrability, any doubt regarding the scope of an arbitration clause is "to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576–77 (6th Cir. 2003).

Pitino's outrage claim arises from the same operative facts as Pitino's pending parallel claim against adidas for breach of contract, brought by Pitino under the Arbitration Clause, and thus both claims should be resolved in arbitration. In order to link adidas to Gatto's alleged conduct, as Pitino must for both his tort and contract claims, the Complaint repeatedly raises adidas's commercial interest in the athletic success of the universities it outfits, asserting that the scheme alleged in the Criminal Complaint boiled down to an effort to "help one of [adidas's] flagship schools . . . secure a five star caliber kid." (Compl. ¶ 21.) Whether characterized as "bad faith" in the contract claim or "outrageous conduct" here, both the tort claim and the contract claim involve the same relevant facts and issues. Principally, as Pitino concedes by repeatedly placing his personal culpability at issue, (*see, e.g.*, Compl. ¶¶ 1, 2, 4, 26–29, 31), proof of Pitino's involvement in the scheme, whether directly through phone calls to Gatto shortly before a key recruit committed to UofL, as alleged in the Criminal Complaint, (Crim. Compl. ¶ 37), or indirectly through the actions of

---

objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Rule 7(a).

Pitino's staff, (*see* Compl. ¶ 19), would defeat both Pitino's implied covenant and outrage claims. *See Allen v. Clemons*, 920 S.W.2d 884, 887 (Ky. App. 1996) (affirming dismissal of outrage claim where alleged damages were "a direct and proximate result of [plaintiff's] criminal conduct"). Pitino further demonstrates the centrality of the parties' commercial relationship to resolution of this action by citing the longstanding endorsement deal between adidas and UofL in seeking to explain away his multiple phone calls to Gatto leading up to the recruit's commitment to UofL. (Compl. ¶ 28.)

The Court should dismiss the Complaint so that Pitino's tort claim can be resolved under the dispute resolution procedures Pitino agreed to in the Endorsement Agreement and has invoked to bring another claim arising from the same factual allegations and raising similar issues. *See, e.g., NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 813 (6th Cir. 2008). The centrality of adidas's commercial relationship with the University of Louisville and Pitino to this action, Pitino's reliance on adidas's commercial interest in the success and prominence of the UofL men's basketball team as a basis for holding adidas responsible for Gatto's alleged conduct, (Compl. ¶¶ 13, 15, 24), and the strong federal policy favoring arbitration, *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), support dismissal of this case in favor of arbitration. The Court should reject Pitino's effort to take two bites at the apple for what is, in fact, a single dispute arising from the parties' commercial relationship, should enforce the parties' Arbitration Clause, and dismiss (or stay) the Complaint in favor of the parallel pending arbitration process Pitino has begun.

## II.     The Court Should Dismiss this Action, or Transfer It to the Proper Venue, Pursuant to the Parties' Contractual Forum Selection Clause.

Even if Pitino's claim could proceed in court—and it should not, as outlined above— the Complaint nevertheless should be either dismissed without prejudice for failure to file in

the contractually agreed upon forum of Multnomah County, Oregon, or transferred to the United States District Court for the District of Oregon, Portland Division. *Smith v. Aegon Cos. Pension Plan,* 769 F.3d 922, 934 (6th Cir. 2014) (affirming dismissal of action for improper venue based on contract provision); 28 U.S.C § 1404(a) ("[A] district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.").

Federal law "requires that a valid forum-selection clause be given controlling weight in all but the most exceptional cases," and "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. District of Texas*, 134 S. Ct. 568, 579, 581 (2013). "Public policy supports a broad reading of forum selection clauses." *Travelers Prop. Cas. Co. of Am. v. Centimark, Corp.*, 2005 WL 1038842, at *2 (S.D. Ohio May 3, 2005). Consistent with that public policy, where a tort claim arises from the "same common nucleus of operative fact" as a contract claim, the contractual forum selection clause applies, even if the complaint pleading the tort avoids specific references to the contract. *See Ky. Ins. Guar. v. S&A Constructors, LLC*, 2017 WL 3090304, at *3 (W.D. Ky. 2017); *Wireless Props., LLC v. Crown Castle Int'l Corp.*, 2011 WL 3420734, at *7 (E.D. Tenn. Aug. 4, 2011) (rejecting plaintiff's "artful pleading" to rework breach of contract claims into tort claims where both involved parallel and intertwined operative facts); *Travelers*, 2005 WL 1038842, at *2 ("[W]here a tort claim is substantially related to the contract claim in terms of factual and legal issues, the forum selection clause covers the tort claim as well.").

Pitino and adidas unambiguously agreed in the Endorsement Agreement that *any* disputes should be resolved in Multnomah County, Oregon. (Endorsement Agreement § 27

9

("The parties hereby agree and consent to the *exclusive* jurisdiction and venue of any state or federal court located in Multnomah County, Oregon.") (the "Forum Selection Clause") (emphasis added).)[3] This provision complements the Arbitration Clause, reflecting the parties' agreement that, to the extent claims related to their commercial relationship are not subject to binding arbitration, they must be resolved exclusively by the courts in Multnomah County, Oregon. *Branch v. Mays*, 2017 WL 3048659, at *2 (E.D. Tenn. May 25, 2017) ("[T]he weight of authority holds . . . [that] mandatory arbitration clauses and forum-selection clauses are not mutually exclusive, but rather are complementary.") (citing *Personal Sec. & Safety Sys., Inc. v. Motorola, Inc.*, 297 F.3d 388, 396 (5th Cir. 2002) (interpreting forum selection clause "to mean that the parties must litigate in [chosen forum] only those disputes that are not subject to arbitration")).

A comparison of the Complaint and Pitino's letter invoking the Arbitration Clause to resolve his contract claim demonstrates that Pitino's tort claim arises from the same common nucleus of facts as the contract claim he is seeking to arbitrate with adidas, particularly as those facts relate to adidas's responsibility for Gatto's alleged conduct and the extent of Pitino's involvement in the alleged scheme. *Supra* at Part I. The parties agreed that disputes relating to their commercial relationship would be decided in Oregon. *See Atl. Marine*, 134 S. Ct. at 583 (instructing courts not to unnecessarily disrupt parties' settled expectations concerning a choice of forum). To the extent his claim in this action is not subject to the Arbitration Clause, because Pitino's tort claim shares the same operative facts

---

[3]    The Court properly may consider materials outside the pleadings in ruling on a motion to transfer venue. *See Morgantown Machine & Hydraulics of Ohio, Inc. v. Am. Piping Prods., Inc.*, 2016 WL 705261, at *2 (N.D. Ohio Feb. 23, 2016).

with his contractual claim, the Court should enforce the parties' agreement and dismiss or transfer this action to be pursued in the contractually agreed upon forum.

## III.     The Court Should Dismiss Pitino's Complaint for Failure to State a Claim.

Kentucky courts "recognize the tort of outrage cause of action, but have applied it only sparingly." *Lee v. Hefner*, 136 F. App'x 807, 814 (6th Cir. 2005); *see Mineer v. Williams*, 82 F. Supp. 2d 702, 706 (E.D. Ky. 2000) ("The standards for this tort are strict."). To plead a tort of outrage, a complaint must plausibly allege that the plaintiff suffered extreme emotional distress as a result of conduct that was both (1) directed at the plaintiff and (2) so atrocious in nature as to be utterly intolerable in a civilized community. Because the Complaint fails to allege outrageous conduct *directed at Pitino*, it must be dismissed.

### A.     As a Third Party to the Alleged Conduct, Pitino Cannot Recover for Emotional Distress.

Kentucky law requires that the alleged outrageous conduct be directed at the plaintiff. *See Mineer*, 82 F. Supp. 2d at 707 ("[A] third person toward whom [the tortious actions] . . . were not directed has no claim for outrage"); *Allen*, 920 S.W.2d at 885–86 (affirming dismissal of wife's outrage claim where defendant erected billboard referencing plaintiff's husband's status as convicted child molester); *see generally Lee*, 136 Fed. App'x at 810, 814 (affirming dismissal of outrage claim brought by parents of severely autistic adult who was physically detained by a police officer because "the Kentucky courts have not recognized a cause of action which allows recovery for outrageous conduct directed at a third person"). Indeed, Kentucky is among the most restrictive states in setting the parameters of an outrage claim, denying a cause of action even to plaintiffs who allegedly suffer extreme emotional distress as a result of outrageous conduct directed at close relatives. *See, e.g.*, *Allen*, 920 S.W.2d at 885–86; *Lee*, 136 F. App'x at 814 ("[S]ubsection 2 of

[Restatement] § 46, which provides for liability for third persons who are present at the time, has not been adopted by the Kentucky courts."). These cases demonstrate that Kentucky explicitly has *not* extended the cause of action to individuals who, like Pitino, allege they suffered extreme distress, as a result of conduct directed at another person or entity.

The requirement that the alleged conduct be directed at the plaintiff is "justified by the practical necessity of drawing the line somewhere" when defining the class of persons entitled to recover for emotional distress. *Cooper v. Bd. of Educ.*, 2009 WL 2581239, at *3 (Del. Super. Aug. 20, 2009) (observing that "the number of persons who may suffer emotional distress at the news of an assassination of the President is virtually unlimited"); *accord*, Restatement (Second) of Torts § 46 cmt. l. Even in states that permit third parties to bring claims for emotional distress, the law generally requires that "plaintiffs [be] present at the time [of the tortious conduct]," and does not extend to those like Pitino "who discover later what occurred." Restat. (Second) of Torts § 46 cmt. l.

Pitino's outrage claim fails because he does not—and cannot—allege any conduct "directed" at himself. The allegedly tortious conduct described in the Complaint is that "Adidas and its employees … brib[ed] a University of Louisville basketball recruit, or his family, to join the University of Louisville men's basketball team." (Compl. ¶ 37.) The Complaint expressly states that any "fraudulent actions were *directed at the University of Louisville*," not at Pitino; that adidas "*had no desire to adversely affect* [*Pitino's*] contracts with his employer or others"; and that any gains adidas realized were *not at Pitino's expense*. (Compl. ¶ 38 (emphasis added).) In addition, none of the alleged statements in the Criminal Complaint that appear to implicate Pitino in the alleged conspiracy are said to have been made by employees of adidas. (*See* Crim. Compl. ¶¶ 36(d), (e).) While the mere failure to

allege conduct directed at Pitino would be sufficient to support dismissal, the Complaint removes all doubt by asserting that the alleged conduct was directed at UofL and that Pitino had no part in, and indeed was totally unaware of, the allegedly tortious conduct. By his own admission, Pitino is a third party to the allegedly tortious conduct and so cannot recover for outrage under Kentucky law.

### B.  The Conduct Alleged Does Not Meet the High Threshold for Outrage Claims under Kentucky Law.

Even where a plaintiff was the direct target of the alleged outrageous conduct, which Pitino was not, courts in Kentucky have "set a high threshold for outrage claims." *Youngblood v. City of Paducah*, 2016 WL 2643030, at *5 (W.D. Ky. May 6, 2016) (quoting *Stringer v. Wal-Mart Stores*, Inc., 151 S.W.3d 781, 791 (Ky. 2004), *overruled on other grounds by Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Humana*, 796 S.W.2d at 3 (quoting Restat. (Second) of Torts § 46 cmt. d). This demanding standard reflects Kentucky's strict limits on the scope of this tort.

Allegations of reprehensible and even criminal conduct are routinely found insufficient to support a claim of outrage. *See, e.g.*, *Banks v. Fritsch*, 39 S.W.3d 474, 481 (Ky. App. 2001) (no evidence to support recovery where defendant chained high school student to tree by student's ankle and neck); *Effinger v. Philip Morris, Inc.*, 984 F. Supp. 1043, 1047 (W.D. Ky. 1997) (repeated sexual harassment by employee's supervisor over course of two years, including use of sexual gestures and lewd comments regarding employee's daughter, did not rise to level of "extreme and outrageous" conduct). In the divorce proceedings described in *Whittington v. Whittington*, 66 S.W.2d 73 (Ky. App. 1989), a wife sought to

recover for outrage suffered when her husband forged her signature on a check received from the sale of the marital residence and spent the proceeds in violation of a prejudgment attachment of all marital assets. Recognizing the conduct as reprehensible and fraudulent, the court nevertheless ruled that "ordinary fraud . . . can never reach the status of outrageous conduct." *Id.* at 74; *accord Puri v. Baugh,* 2015 WL 3796346, at *9 (W.D. Ky. June 18, 2015) (negligently or fraudulently inducing party to sign improper release, though it involved "malicious and deceptive" conduct, was not outrageous). The conduct alleged in the Complaint falls well short of the high standard imposed by Kentucky law.

It is possible to take the alleged conduct seriously—and adidas does—while drawing a distinction between wrongful payments allegedly made to the family of a high school basketball player and conduct directed at an individual that is atrocious and utterly intolerable in a civilized community. Pitino's Complaint alleges that an adidas employee engaged in outrageous conduct by conspiring to pay money to the family of a college basketball recruit in violation of NCAA rules, concealing those payments from the NCAA and officials at UofL, and disguising the transactions on adidas's accounting books. (Compl. ¶¶ 19-22.) Major violations of NCAA rules have become a frequent occurrence; the Complaint acknowledges that Pitino and UofL were penalized earlier this year for recruiting violations involving sex acts performed for underage basketball recruits. (Compl. ¶ 24.) While the allegations in the Criminal Complaint, and violations of NCAA rules more generally, remain an extremely serious issue that merits attention from both inside and outside the NCAA, as a matter of law it cannot be maintained that the conduct at issue goes "beyond all possible bounds of decency [such that it is] regarded as atrocious, and utterly intolerable in a civilized community." *Humana*, 796 S.W.2d at 3 (quoting Restat. (Second)

Torts § 46 cmt. d.) The Complaint's allegations of violations of NCAA rules and fraud allegedly perpetrated against UofL do not rise to the level of "outrageous conduct" that would satisfy Kentucky's stringent legal standard.

The conduct alleged in the few cases in which a claim of outrage survived the pleading stage is marked, in contrast to the allegations in the Complaint, both by its extremity and prolonged duration. These cases do not concern regulatory violations or even fraud, but conduct of an altogether intolerable nature. (They also all involve conduct directed at the plaintiff, not a third party, as required by Kentucky law.) For example, in *Wilson v. Lowe's Home Ctr.*, 75 S.W.3d 229, 237–38 (Ky. App. 2001), the plaintiff was subject to denigrating racial remarks and epithets on a nearly daily basis by coworkers and supervisors for period of seven years. Pitino's allegation that a conspiracy to make improper payments to the family of a UofL recruit tarnished his reputation as a coach pales in comparison. Often these cases involve physical menacing. In *Craft v. Rice*, the defendant allegedly harassed plaintiff "by keeping her under surveillance at work and home, telling her . . . that he would put her husband in jail and driving so as to force her vehicle into an opposing lane of traffic." 671 S.W.2d 247, 248 (Ky. 1984). By contrast, Pitino fails to allege that any action was directed against him at all, much less conduct that made him fear for his personal safety. Also, although Kentucky courts have noted that a special relationship of trust between the defendant and plaintiff can exacerbate conduct to such a degree as to sometimes satisfy the demanding standards for outrage, *see, e.g., Osborne v. Payne*, 31 S.W.3d 911, 914 (Ky. 2000), Pitino alleges no such special relationship with adidas. Nor could he, as the alleged outrage arose in the context of a longstanding commercial relationship between two sophisticated parties.

15

In short, Pitino's complaint exhibits none of the hallmarks of a sustainable claim of outrage. Kentucky law does not permit an unindicted co-conspirator to recover from the employer of his alleged co-conspirators for the embarrassment of being implicated by the government in the alleged criminal conspiracy. Pitino's claim seeks a significant and unwarranted expansion of the tort of outrage under Kentucky law, and the Court should dismiss the Complaint with prejudice.

## CONCLUSION

The Court should dismiss the Complaint, or transfer this action to the U.S. District Court for the District of Oregon, Portland Division.

Respectfully submitted,

*/s/  Michael T. Leigh*
Clark C. Johnson
Michael T. Leigh
Jeffrey S. Moad
STITES & HARBISON PLLC
400 West Market, Suite 1800
Louisville, Kentucky 40202
Tel: (502) 587-3400
Fax: (502) 587-6391
cjohnson@stites.com
mleigh@stites.com
jmoad@stites.com

William H. Taft V (*pro hac vice* application pending)
Miheer Mhatre (*pro hac vice* application pending)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
Fax: (212) 521-6386
whtaft@debevoise.com
mmhatre@debevoise.com

*Counsel to Defendant adidas America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2017 I served the foregoing document on all counsel of record through CM/ECF.


_/s/  Michael T. Leigh_____
*Counsel for Defendant adidas America, Inc.*