UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

RICHARD A. PITINO,                                                                                         Plaintiff,

v.                                                                     Civil Action No. 3:17-cv-639-DJH

ADIDAS AMERICA, INC.,                                                          Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Former University of Louisville men's basketball coach Rick Pitino filed this action against Adidas America, Inc., asserting a single claim of outrage under Kentucky law. (Docket No. 1) He alleges that Adidas knowingly or recklessly caused him emotional distress when its employees conspired to bribe University of Louisville basketball recruits, as detailed in a criminal complaint filed in the U.S. District Court for the Southern District of New York. (*Id.*, PageID # 5-9, 12) Adidas has moved to dismiss, stay, or transfer this case. (D.N. 7) It argues that Pitino's claim is subject to mandatory arbitration under the parties' Endorsement Agreement (*id.*, PageID # 36-38); that any court action must proceed in the U.S. District Court for the District of Oregon pursuant to the Endorsement Agreement (*id.*, PageID # 38-41); and that the complaint fails to state a claim for relief in any event (*id.*, PageID # 41-45). The Court agrees that arbitration is required and will therefore grant Adidas's motion.

**I.**

A detailed recitation of the facts is unnecessary for present purposes. Adidas is the University of Louisville's athletic outfitter. (D.N. 1, PageID # 4) In addition, the Endorsement Agreement between Pitino and Adidas provided that Pitino would endorse Adidas products and require the University's basketball coaching staff and players to wear only Adidas products

1

during games, practices, and other team activities. (D.N. 7-3, PageID # 83-85) In order to secure top basketball players for college programs with which it was associated, Adidas allegedly bribed recruits, including making arrangements for payments totaling $100,000 for one recruit to join the University of Louisville men's basketball team. (D.N. 1, PageID # 5-9) Pitino asserts that he "now is publicly perceived as having participated or acquiesced in Adidas' actions" and has suffered "profound embarrassment, humiliation, and emotional injury" as a result of the company's "extreme and outrageous conduct." (*Id.*, PageID # 11-12)

Adidas maintains that the Endorsement Agreement requires arbitration of Pitino's claim. It points to the Agreement's arbitration provision, which states:

> The parties agree that any dispute concerning the interpretation, construction or breach of this Agreement shall be submitted to a mediator agreed upon by the parties for nonbinding confidential mediation at a mutually agreeable location. . . . If the parties fail to resolve their dispute through mediation, then the parties agree that the dispute shall be submitted to final and binding confidential arbitration before the American Arbitration Association in Portland, Oregon.

(D.N. 7-3, PageID # 88) Adidas notes that Pitino has already "initiated the dispute resolution process under the Endorsement Agreement, claiming that [A]didas 'breached its duties of good faith and fair dealing by conspiring with others to bribe the family of a University of Louisville basketball recruit.'" (D.N. 7, PageID # 35-36) That breach-of-contract claim and the outrage claim asserted here, Adidas argues, "arise[] from the same operative facts" and thus are both covered by the arbitration clause. (*Id.*, PageID # 37) It asks the Court to dismiss or stay this action so that the claim may be arbitrated. (*Id.*, PageID # 36-38) In the alternative, Adidas asserts that the matter should be dismissed for improper venue or transferred to the District of Oregon, the forum designated in the Endorsement Agreement. (*Id.*, PageID # 38-41) Finally, Adidas argues that even if Pitino's complaint were properly before the Court, it should be

dismissed for failure to state a viable claim of outrage under Kentucky law. (*Id.*, PageID # 41-46) Because the Court agrees with Adidas's first argument, it need not address the latter two.

## II.

Typically, the Court's inquiry when a party seeks to compel arbitration is "whether the dispute is arbitrable[,] meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *NCR Corp. v. Korala Assocs.*, 512 F.3d 807, 812 (6th Cir. 2008) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (citations omitted). "Multiple courts, including the Eastern and Western Districts of Kentucky, have held that where the parties agree to arbitrate according to the [American Arbitration Association] rules, they provide a clear and unmistakable delegation of authority to the arbitrator to decide objections related to the scope or validity of the arbitration provision."[1] *W. Land Co. v. Francis*,

---

[1] The Sixth Circuit has not expressly adopted this rule. *See Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 506 (6th Cir. 2011) (assuming without deciding that rule applied (citing *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208 (2d Cir. 2005))). Nearly every circuit court of appeals has, however, and district courts within the Sixth Circuit regularly apply it. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014); *Petrofac, Inc. v. Dynmcdermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp.*, 398 F.3d at 208; *P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 867 (10th Cir. 1999); *Bishop v. Gosiger, Inc.*, 692 F. Supp. 2d 762, 769-70 (E.D. Mich. 2010); *Book Depot P'ship v. Am. Book Co.*, No. 3:05-CV-163, 2005 U.S. Dist. LEXIS 33782, at *8 (E.D. Tenn. June 24, 2005) (noting that "a significant majority of courts" have adopted the reasoning set out in *Contec*); *see also Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 528 (4th Cir. 2017) (reaching same conclusion with respect to similar Judicial Arbitration & Mediation Services rules); *Chevron Corp. v. Republic of Ecuador*, 795 F.3d 200, 207-08 (D.C. Cir. 2015) (U.N.

No. 4:13-CV-00058-M, 2013 U.S. Dist. LEXIS 109456, at *5-*6 (W.D. Ky. Aug. 5, 2013) (citing *Bowden v. Delta T Corp.*, No. 06-345-JBC, 2006 WL 3412307, at *7 (E.D. Ky. Nov. 27, 2006); *Morsey Constructors, LLC v. Burns & Roe Enters., Inc.*, No. 5:08-CV-23-R, 2008 WL 3833588, at *4 (W.D. Ky. Aug. 13, 2008)). This is because the AAA rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." American Arbitration Association, *Commercial Arbitration Rules and Mediation Procedures* 13, https://www.adr.org/sites/default/files/CommercialRules_ Web.pdf (Oct. 1, 2013) [hereinafter *AAA Rules*]. Adidas contends that the parties invoked the AAA rules in the Endorsement Agreement and that "[t]o the extent there is any dispute regarding the scope of the Arbitration Clause, that dispute must be resolved by the arbitrator." (D.N. 7, PageID # 36 (citing *W. Land Co.*, 2013 U.S. Dist. LEXIS 109456, at *5-*6); *see id.* n.2)

Unlike the agreements at issue in *Western Land Co.* and the cases cited therein, the Endorsement Agreement does not expressly refer to the AAA rules; rather, it merely provides that the parties will submit to binding arbitration "before the American Arbitration Association" if mediation is unsuccessful. (D.N. 7-3, PageID # 88) However, "[a] party who consents by contract to arbitration before the AAA also consents to be bound by the procedural rules of the AAA, unless that party indicates otherwise in the contract." *P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 867-68 (10th Cir. 1999) (citing *Schulze & Burch Biscuit Co. v. Tree Top, Inc.*, 642 F. Supp. 1155, 1157 (N.D. Ill. 1986), *aff'd*, 831 F.2d 709 (7th Cir. 1987); *Mulcahy v. Whitehill*, 48 F. Supp. 917, 919 (D. Mass. 1943)) (concluding that "[b]y agreeing to arbitrate before the AAA, and by not specifying an alternative set of arbitration rules in the agreement, [the parties]

---

Commission on International Trade Law arbitration rules); *Apollo Computer v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989) (International Chamber of Commerce arbitration rules).

impliedly agreed that they would be bound, in the course of arbitration proceedings, by the procedural rules of the AAA"); *see also Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 203 F.R.D. 677, 684 (S.D. Fla. 2001) (finding that parties agreed to application of AAA rules where "the relevant arbitration provisions of the Agreement mandate[d] that any arbitration shall be conducted by the AAA under its auspices"). Indeed, Rule 1(a) of the AAA rules provides that "[t]he parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the [AAA] under its Commercial Arbitration Rules or for arbitration of a domestic commercial dispute without specifying particular rules." *AAA Rules* at 10; *see P&P Indus.*, 179 F.3d at 867.

Nor is it significant that the Endorsement Agreement provides for nonbinding mediation before arbitration commences. *See, e.g.*, *Electrolux Home Prods., Inc. v. Mid-South Elecs., Inc.*, No. 6:07-CV-016-KKC, 2008 U.S. Dist. LEXIS 61416, at *18 (E.D. Ky. Aug. 11, 2008) (finding that "the parties agreed to arbitrate arbitrability" where their agreement provided for arbitration in accordance with AAA rules if dispute was not resolved by mediation,); *see also Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 105 (S.D.N.Y. 2017) (same); *LaSalle Grp., Inc. v. Veterans Enter. Tech. Servs., LLC*, No. 11-03517-CV-S-DGK, 2012 U.S. Dist. LEXIS 46151, at *11-*12 (W.D. Mo. Apr. 2, 2012) (same). In sum, the Court finds that by providing for arbitration "before the American Arbitration Association" (D.N. 7-3, PageID # 88), Pitino and Adidas "agreed to arbitrate arbitrability." *Electrolux Home Prods.*, 2008 U.S. Dist. LEXIS 61416, at *18.

The Court's analysis does not end there, however, because "even where the parties expressly delegate to the arbitrator the authority to decide the arbitrability of the claims related to [their] arbitration agreement, this delegation applies only to claims that are at least *arguably*

5

covered by the agreement." *Turi*, 633 F.3d at 511; *see id.* at 506-07 (assuming, without deciding, that *Contec* rule applied). The parties dispute whether Pitino's claim falls within the scope of the Endorsement Agreement's arbitration provision. (*See* D.N. 7, PageID # 37-38; D.N. 11, PageID # 118-20)

"[T]o determine whether a particular claim or dispute falls within the scope of an arbitration agreement," the Court asks "if [the] action can be maintained without reference to the contract or relationship at issue." *NCR Corp.*, 512 F.3d at 814 (quoting *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 505 (6th Cir. 2007)). If so, then "the action is likely outside the scope of the arbitration agreement—along with the presumption in favor of arbitrability and the intent of the parties." *Id.* (quoting *Nestle Waters*, 505 F.3d at 505). But

> a party cannot avoid arbitration simply by renaming its claims so that they appear facially outside the scope of the arbitration agreement. In order to determine whether such renaming has occurred, a court must examine the underlying facts—when an otherwise arbitrable claim has simply been renamed or recast it will share the same factual basis as the arbitrable claim.

*Id.* at 818 (quoting *Simon v. Pfizer Inc.*, 398 F.3d 765, 776 (6th Cir. 2005)). Here, the facts underlying Pitino's tort and contract claims are identical: both claims are based on Adidas's alleged bribing of a University of Louisville basketball recruit or his family. (*Compare* D.N. 1, PageID # 12 (alleging that "Adidas and its employees engaged in extreme and outrageous conduct by bribing a University of Louisville basketball recruit, or his family, to join the University of Louisville men's basketball team"), *with* D.N. 7-4, PageID # 92 ("Pitino alleges that Adidas breached its duties of good faith and fair dealing by conspiring with others to bribe the family of a University of Louisville basketball recruit"))

Moreover, there is a "strong presumption in favor of arbitration," *id.* at 813, and thus "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,"

particularly where—as here—the arbitration clause is broad. *NCR Corp.*, 512 F.3d at 813 (quoting *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004)); *cf. Turi*, 633 F.3d at 507 (explaining that "the FAA's presumption of arbitrability regarding the merits of a dispute does not apply with equal force to narrow arbitration agreements" and that "[t]he more narrow the arbitration clause in question, the more likely that the provision does not even 'arguably' apply to the dispute at issue." (citations omitted)). Given this standard and the shared factual basis between the claims, the Court finds that the claim asserted here is "at least *arguably* covered by" the Endorsement Agreement. *Turi*, 633 F.3d at 511; *see Simon*, 398 F.3d at 776. The question of whether it is in fact arbitrable must therefore be answered by the arbitrator. *See Turi*, 633 F.3d at 511.

Although the Court concludes that arbitration is required, it cannot compel the parties to arbitrate. Rather, because the Endorsement Agreement specifies that arbitration shall take place in Oregon, "only a district court in that forum has jurisdiction to compel arbitration." *Milan Express Co. v. Applied Underwriters Captive Risk Assur. Co.*, 590 F. App'x 482, 486 (6th Cir. 2014) (citing *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003)); *see* 9 U.S.C. § 4 (stating that hearing and proceedings under arbitration agreement "shall be within the district in which the petition for an order directing such arbitration is filed"). Accordingly, the Court will dismiss Pitino's complaint without prejudice. *See Milan Express Co.*, 590 F. App'x at 486.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that the motion to dismiss (D.N. 7) is **GRANTED**. This matter is **DISMISSED** without prejudice and **STRICKEN** from the Court's docket.

August 14, 2018

**David J. Hale, Judge
United States District Court**